Alberto Lopez, 20477-038

USP Tucson, PO Box 24550

Tucson AZ  85734

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

AT BOSTON


Alberto Lopez,                          CR#: 95-10064-NMG

                                        Rule 60(b), Habeas Corpus 28
USC 2241

        Petitioner/Movant

v.

United States of America,

        Respondent/Movee


MOTION UNDER F.R.Civ.P. 60(b)(4)

"GREAT WRIT" HABEAS CORPUS UNDER 28 U.S.C. 2241.

NOTIFICATION OF LACK OF CRIMINAL JURISDICTION TO ALL APPEALS

AND DISTRICT COURT JUDGES IN THIS CIRCUIT.


(See MEMORANDUM OF LAW AND FACT REGARDING CLAIM OF VOIDNESS OF

DEFENDANTS' CONVICTIONS, post.)

COMES NOW Notificant/Petitioner Alberto Lopez, sui juris (pro se), a federal prisoner located at USP Tucson, Arizona. Lopez hereby files this 28 U.S.C. 2241 "Great Writ" habeas corpus action and 60(b)(4) motion.

According to 28 U.S.C. 2243, the judge must either immediately GRANT the writ or "forthwith" order the Respondent to Answer within three (3) days, or a maximum of 20 days for good cause.

The judge is obligated to continue the criminal case with a sua sponte (on the judge's own motion) Federal Rule of Civil Procedure 60(b)(4) ("judgment is void") motion. Because such a motion is the continuation of a criminal case, and is not the initiation of a new case under a new (civil) docket, see United States v. Morgan (Supreme Court, 1954), Lopez is entitled to the appointment of a counsel under 18 U.S.C. 3006A(c). ("at all stages")

THE PETITION/MOTION

Lopez relates and asserts that numerous federal criminal statutes supposedly existing since 1948 in Title 18 United States Code did not and do not exist in that Title, due to a defect in the passage of a Congressional bill, H.R. 3190, in 1948. In addition, the same defective passage resulted in the non-existence of statute 18 U.S.C. 3231, which purportedly gives federal courts jurisdiction over all federal crimes in each Title, not merely Title 18. The non-existence of 18 U.S.C. 3231 means that federal courts do not possess general criminal jurisdiction over ANY federal criminal statute.

The law recodifying Title 18, P.L.80-772, was not

legally enacted because the bill H.R. 3190 (1948) was not identically passed by both the House and the Senate, as is required by the U.S. Constitution. Clinton v. City of New York, 524 US 417, 448, 141 L.Ed.2d 393, 420 (1998). Thus, "18 U.S.C. 3231" does not exist as a valid statute: the district courts nor the appeals courts had no subject-matter jurisdiction over federal criminal statutes.

In addition, due to the non-passage of H.R. 3190 in 1948, numerous jurisdictional, definitional, procedural, and limitation statutes ostensibly in Title 18 do not exist and have no existed since 1948, making all prosecutions and convictions since 1948 defective.

See "MEMORANDUM OF LAW AND FACT REGARDING CLAIM OF VOIDNESS OF DEFENDANTS' CONVICTIONS", post.


F.R.Civ.P. 60(b)(4) IS A PROPER FORM OF RELIEF

Until recently, both federal district and appellate courts were regularly misconstruing ("recharacterizing") filings under F.R.Civ.P. 60(b) as if they were filed under 28 U.S.C. 2255. Castro v. U.S., 540 US 375, 381, 157 L.Ed.2d 778, 786 (2003):

"Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. [...] They may do so in order to avoid an unnecessary dismissal, e.g., [United States v. Tindle, 173 U.S. App. D.C. 77, 592 F.2d 689], at 692-693, [(D.C. Cir. 1975)], to avoid inappropriately stringent application of formal labelling requirements, see Haines v. Kerner, 404 US

519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972) (per curiam), or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis, see Hughes v. Rowe, 449 US 5, 10, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980) (per curiam); Andrews v. United States, 373 US 334, 10 L.Ed.2d 383, 83 S.Ct. (1963)."  (end quote from Castro)

Despite the positive "spin" of this claim, in reality this recharacterization was often done to improperly invoke an impediment or obstacle to the movant, for example the 28 U.S.C. 2255 time bar in order to deny relief, or to manufacture some other obstruction, in order to harm and not to help the unrepresented litigant.  This is in direct opposition to both the letter and spirit of Haines v. Kerner, 404 US 519, 520 (1972):

"...the allegations of the pro se complaint, [...] we hold to less stringent standards than formal pleadings drafted by lawyers..."   (end quote from Haines)

Gonzalez v. Crosby, 545 US 524 534, 162 L.Ed.2d 480, 494 (2005) corrected this invidious practice stating:

"Rule 60(b) has an unquestionably valid role to play in habeas cases.  The Rule is often used to relieve parties from the effect of a default judgment mistakenly entered against them, e.g., Klaprott, 335 US at 615, 93 L.Ed. 266, 69 S.Ct. 384 (opinion of Black, J.), a function as legitimate in habeas cases as in run-of-the-mine civil cases.  The Rule also preserves parties' opportunity to obtain vacatur of a judgment THAT IS VOID FOR LACK OF SUBJECT-MATTER JURISDICTION - a consideration just as valid in habeas cases AS IN ANY OTHER, since the absence of jurisdiction altogether deprives a

federal court of the power to adjudicate the rights of the parties. Steel Co. v. Citizens For a Better Environment, 523 US 83, 94, 101, 140 L.Ed.2d 210, 118 S.Ct. 1003 (1998). In some instances, we may note, it is the State, not the habeas petitioner, that seeks to Rule 60(b) to reopen a habeas judgment granting the writ. See, e.g., Ritter v. Smith, 811 F.2d 1398, 1400 (11th Cir. 1987)."   (end quote from Gonzalez v. Crosby, emphasis by capitals added)

As stated in Gonzalez by Justice Stevens, joined by Souter, in dissent, 545 US at 539, 162 L.Ed.2d at 497:

"The most significant aspect of today's decision is the Court's UNANIMOUS rejection of the view that all postjudgment motions under Federal Rule of Civil Procedure 60(b) except those alleging fraud under Rule 60(b)(3) should be treated as second or successive habeas corpus petitions." (emphasis by capitals added.)

A F.R.Civ.P. 60(b)(4) motion ("judgment is void") is an attack, not on the judgment on the merits, but instead on the jurisdiction of the court to address those merits. Such a motion is a "'true' 60(b) motion", and is not a "second or successive" 2255 filing within the meaning of Gonzalez v. Crosby, 545 US 524, 534, 539, 162 L.Ed.2d 480, 494, 497 (2005). Defendants were charged with crimes over which the court had no jurisdiction, because bill H.R. 3190 didn't pass, so P.L. 80-772 did not become law as was and is commonly thought. Therefore, the district court did not have subject matter jurisdiction, and the judgment resulting is void. Defendants are entitled to 2241 habeas and 60(b)(4) relief from void judgments.

Gonzalez overruled cases such as U.S. v. Fair, 326 F.3d 1317, 1318 (11th Cir. 2003), which had stated:

"In United States v. Mosavi, 138 F.3d 1365 (11th Cir. 1998), we addressed the applicability of Rule 60(b) in the context of a criminal case. [...] This Court stated, however, that the Federal Rules of Civil Procedure limited their application to CIVIL cases. Consequently, we held that the appropriate vehicle for challenging the forfeiture was Mosavi's direct criminal appeal and his conviction and sentence and that Rule 60(b) simply does not provide for relief from judgment in a criminal case."

(emphasis by italics in original converted to capitals; end of quote from Fair.)

The discovery that purported statute 18 U.S.C. 3231 is invalid constitutes "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59", which can be addressed by Rule 60(b)(2). If any reasonable factfinder had been informed that these statutes were invalid, and there was no valid federal court criminal jurisdiction over acts in violation of statutes in Titles 8, 18, 21, 26, etc, he would not have found these defendants guilty of the offense. Ordinarily, there is a 1-year deadline after the judgment is entered, but in this case Movee actively obstructed these defendants' and Petitioner/Movant Lopez's ability to learn of the invalidity of the statute 18 U.S.C. 3231. Consequently, this should qualify under Rule 60(b)(6), in addition to Rule 60(b)(4). Alternatively, this qualifies as fraud on the court under Rule 60(b)6), because the law was misrepresented by the government

to make it appear that these statutes, including 18 U.S.C. 3231, were valid.

Petitioner Lopez claims for relief under both 2241 habeas and Rule 60(b)(4) because the basis for federal court criminal jurisdiction, 18 U.S.C. 3231, were invalid at both the district and appeals court level.

COURT MUST NOTICE ERROR "AT ANY TIME": F.R.Cr.P. 12(b):

Failure of an indictment to allege a violation of a valid criminal statute means it is legally insufficient. According to Hughes v. Thompson, 415 US 1301, 1302, 39 L.Ed.2d 93, 95 (1974): "[u]nder the Federal Rules of Criminal Procedure the question of the sufficiency of the indictment 'shall be noticed by the court at any time.' Rule 12(b)(2)".

See United States v. Ropp, 347 F.Supp.2d 831, 833 (Central District of California, 2004):

"[Rule 12] apparently permits a defendant to move to quash an indictment for failure to state an offense. Ex Parte Parks, 93 US 18, 20, 23 L.Ed. 787 (1876). Thus, if no statute makes the alleged offense a crime, a defendant may challenge that defect under Rule 12." (end quote from U.S. v. Ropp.)

Ex Parte Parks, 93 US 18, 23 L.Ed. 787, 787-788 (1876) held:

"Whether an act charged in an indictment is or is not a crime by the law which the court administers (in this case the statute law of the United States) is a question which has to be met at almost every stage of criminal proceedings; on motions to quash the indictment, on demurrers, on motions to arrest judgment, etc." (end quote from Parks.)

Therefore, it is mandatory for this court to take judicial notice of the fact that the statutes of which defendants were ostensibly convicted were legally non-existent, or the courts had no subject-matter jurisdiction over the crimes.  18 U.S.C. 3231 has not existed since 1948, or before.

RULE 60(b) (ERROR CORAM NOBIS) MOTION IS CONTINUATION OF A CRIMINAL CASE. NOT NEW CASE UNDER A NEW (CIVIL) DOCKET NUMBER.

U.S. v. Morgan, 346 US 502, 520, 98 L.Ed. 248, 261 (1954) held that a motion under Error Coram Nobis is a continuation of a criminal case:

"We therefore treat the record as absolutely presenting a motion in the nature of a writ of error coram nobis enabling the trial court to properly exercise its jurisdiction.  Adams v. United States, 317 US 269, 272, 87 L.Ed. 268, 271, 63 S.Ct. 236, 143 ALR 435. (Note 4)."  (end quote from U.S. v. Morgan)

Morgan, 98 L.Ed. at 271, note 4:

"Such a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record the beginning of a separate civil proceeding. Kurtz v. Moffit, 115 US 487, 494, 29 L.Ed. 458, 459, 6 S.Ct. 148.  While at common law the writ of error coram nobis was issued out of chancery like other writs, Stephens, Principles of Pleading 3d Am. Ed. 142, the procedure by motion in the case is now the accepted American practice.  Pickett's Heirs v. Legerwood, (U.S.) 7 Pet 144, 147, 8 L.Ed. 638, 639; Wetmore

v. Karrick, 205 US 141, 151, 51 L.Ed. 745, 748, 27 S.Ct. 434; United States v. Mayer, 235 US 55, 67, 59 L.Ed. 129, 135, 35 S.Ct. 16. As it is such a step, we do not think that Rule 60(b), Fed Rules of Civ. Proc., expressly abolishing the writ of error coram nobis in civil cases, applies." (end quote from Note 4, U.S. v. Morgan.)

MOTION TO APPOINT COUNSEL: F.R.Cr.P. 44(a), 18 U.S.C. 3006A(c)

Felony defendants have a right to appointment of counsel. Powell v. Alabama, 287 US 45, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 US 335, 9 L.Ed.2d 799 (1963); Anders v. California, 386 US 738, 18 L.Ed.2d 493 (1967); Faretta v. California, 422 US 806, 45 L.Ed.2d 562 (1974); Scott v. Illinois, 440 US 367, 59 L.Ed.2d 383 (1979); Davis v. United States, 512 US 452, 129 L.Ed.2d 362 (1994).

18 U.S.C. 3006A(c) states, in relevant part:

"Duration and substitution of appointments. A defendant for whom counsel is appointed shall be represented AT EVERY STAGE OF THE PROCEEDINGS from his initial appearance before the United States Magistrate [United States Magistrate judge] or the court through appeal, INCLUDING ANCILLARY MATTERS APPROPRIATE TO THE PROCEEDINGS." (emphasis by capitals supplied.)

18 U.S.C. 3006A was enacted after U.S. v. Morgan, supra, which had held that an Error Coram Nobis (Rule 60(b) proceeding is a "continuation of a criminal case." Morgan, 98 L.Ed. at 271, Note 4.

In Lorillard v. Pons, 434 US 575, 581, 55 L.Ed.2d 40,

46 (1977):

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change, see Albemarle Paper Co. v. Moody, 422 US 405, 414, n.8, 45 L.Ed.2d 280 (1975)." (end quote from Lorillard v. Pons)

In the case of 18 U.S.C. 3006A, after its passage in 1964 it was subsequently amended in 1968, 1970, 1974, 1982, 1984, 1986, 1987, 1988, 1996, 1997, 1999, 2000, and 2004. These amendments did not change the principle, that an attorney is appointed to serve "at all stages" of a criminal case, in any relevant or significant way. By the principle of Albemarle v. Moody, supra, Congress is presumed to adopt the judicial interpretation of U.S. v. Morgan, supra.

And 18 U.S.C. 3006A(c), as of its initial enactment by Congress in 1964, guarantees an attorney "at all stages" of a criminal proceeding. Hence, Congress must have intended that the guarantee in 3006A of an appointed counsel "at all stages of a criminal case" applies to Rule 60(b) proceedings.

Analogously, in Whitfield v. United States, 543 US 200, 216, 160 L.Ed.2d 611, 615 (2005):

"Congress is presumed to have had knowledge of Nash [v. United States, 229 US 373, 57 L.Ed. 1232 (1913)] and Singer [v. United States, 323 US 338, 89 L.Ed. 285 (1945)] when it enacted [18 U.S.C.] 1956(h)." (end quote from Whitfield)

Likewise, Congress can be presumed to have been aware of U.S. v. Morgan, which held that an error coram nobis proceeding is a continuation of a criminal case, and is not a

collateral attack under a civil docket number, when it voted to grant a statutory right to an appointed counsel "at all stages" of a criminal proceeding. Therefore, defendants' right to an appointed attorney, for purposes of preparing and litigating that necessary motion, is guaranteed by 18 U.S.C. 3006A(c), since it is the continuation of a criminal case and/or an "ancillary proceeding" under 3006A(c). See United States v. Martinson, 809 F.2d 1364 (9th Cir. 1987):

"However, on this record it is irrelevant whether Martinson's motion for return of the property was technically filed as a criminal or civil matter. The public defender, once validly appointed, was clearly justified in continuing his representation of Martinson. The motion was sufficiently related to the 1977 criminal case as to be consider an "ancillary" proceeding for purposes of 18 U.S.C. 3006A(c)."
(end quote from U.S. v. Martinson)

A Rule 60(b)(4) motion seeking to overturn a conviction for voidness is at least as related to a criminal case as the return of the property in Martinson, supra.

And, it is quite clear that if Lopez had known of the jurisdictional problem at that time, he could have raised the issue of the invalidity of 18 U.S.C. 3231 (1948) at the time of their indictments, pre-trial, trial, post-trial, or on direct appeal, and he would have been entitled to the services of an appointed attorney to do this work. The fact that time has passed doesn't make this right less real. A Rule 60(b) motion is not a "collateral attack", and is not a "habeas proceeding". A Rule 60(b) motion, as clearly stated in U.S. v. Morgan, supra, is a continuation of a criminal proceeding,

to which defendants have the right to an attorney "at all stages" under 18 U.S.C. 3006A(c).

FACTS NOT DISCOVERABLE WITH "DUE DILIGENCE"

If this filing were construed under 28 U.S.C. 2255, it would be improper to apply the 2255 time bar, because of the exception of 2255(4):

"The limitation period shall run from the latest of -- [...] (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

The specific facts on which this claim is founded are located in the pages of the 1947-48 Congressional Record. Only there would one discover that the House of Representatives had no quorum on May 12, 1947, that they merely "concurred" with the amendments" to bill H.R. 3190, yet did not vote on the full, as-amended bill. These facts are not present in the various books proffered in the law libraries in the prisons of the federal Bureau of Prisons, to Petitioner/Movant Lopez's knowledge and belief. To the contrary, these facts are contradicted by false assertions in law books, such as:

"18 USCS. 1": (Falsely asserts that Title 18 was recodified, and includes a long table of correspondence between old and new statute numbers: "TABLE OF DISPOSITIONS [/p/]. This table indicates where former Title 18 sections were incorporated in Title 18, as revised by Act June 25, 1948, ch 645, 62 Stat, 683, or in other Code provisions, or, if omitted, the reason therefore:");

"18 USCS. 3231": (Falsely states that "This section

was formed by combining former 18 U.S.C. 546 and 547 with former 12 U.S.C. 588d, with no change of substance.");

Any person (especially a pro-se prisoner) depending on these ostensibly-authoritative law books for accurate information would be dissuaded from proceeding further, and would never find the error.

Federal prison libraries don't stock the Congressional Record. The necessary facts are also not accessible through the LEXIS-law computer system that is being installed in some new U.S. penitentiaries, displacing the books. Not shelving the voluminous Congressional Record may have seemed understandable back in the era of paper: Petitioner/Movant Lopez roughly estimates that the full set of Congressional Record books would require about the same shelf space as 4000 books the size of a F.3d (Federal Reporter, Third Edition) book. However, measured now as computer hard-disk data it should amount to about 35 gigabytes, which is only 3.5% of the storage capacity of the largest computer hard drive commercially available. (which is 1 terabyte, or 1000 gigabytes, or 1,000,000 megabytes. Today, a 50-gigabyte drive is considered small).

Unfortunately, the federal government, the BOP, and therefore the prison library staff have an uncompromising and hostile attitude towards obtaining legal material beyond which the library carried in the 1900's. This fact coupled with the passing of the AEDPA has greatly discouraged prisoners from filing any kind of appeals, precisely as intended. Most federal prison libraries, the ones with books, carry Supreme Court decisions dating back to 1960. Their earliest book is

typically 4 L.Ed.2d. They have no L.Ed.'s. Their F.2d's are similarly limited ... dating back to around 267 F.2d (1959). Thus, omitted is the critical first 10 years of legal precedent after the presumptive passage of H.R. 3190/P.L. 80-772/Title 18.

This, and the complete lack of the Congressional Record, completely blocks the ability of prisoners to detect (or independently confirm) the existence of faults in the passage of bills in Congress that initiate or amend federal criminal (or civil) laws. It would be virtually impossible for a pro-se prisoner to detect these kinds of legal defects in his conviction: Prisoners simply cannot find them by the exercise of "due diligence", the expressed standard for the application of 28 U.S.C. 2255(4).

Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004) repeated that Circuit's principle:

"We have previously noted that a due diligence inquiry should take into account that prisoners are limited by their physical confinement. Montenegro v. United States, 248 F.3d 585, 592 (7th Cir. 2001), rev'd on other grounds, Ashley v. United States, 266 F.3d 671 (7th Cir. 2001); see also Easterwood v. Champion, 213 F.3d 1321, 1323 (10th Cir. 2000) (finding a prisoner's access to published legal materials is established once the prison library receives the materials, not when the materials were published.)" (end quote from Moore v. Knight)

As concurred by Judge Tashima in Whalem/Hunt v. Early, 233 F.3d 1146, at 1148:

"Neither the 'impediment' standard contained in the

statute, 28 U.S.C. 2244(d)(1)(B), nor this court's equitable tolling standard, see Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288-89 (9th Cir. 1997), overruled on other grounds, Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998) (en banc), cert. denied, 526 US 1060 [...], requires that petitioner prove an inability to "research and identify [his] claims," as the district court held, in order to rely upon barriers to researching legal issues as the basis for delaying the start of, or tolling, the statute of limitations.  A prisoner acting pro se can be prevented from discovering the most basic procedural rules essential to avoid being summarily thrown out of court, even if the claims alleged in the petition are meritorious, well-drafted, and supported by every pertinent citation entitling him to relief on the merits.  Cf. Rand v. Rowland, 154 F.3d 952, 958 (9th Cir. 1998) (en banc), cert. denied, 527 US 1035 [...] (1999) (noting handicaps faced by prisoners acting pro se in complying with procedural requirements).  A petitioner's knowledge of the legal basis of his claims is not the same as knowledge of the procedural rules that must be complied with in order to get a hearing on the merits." (end quote from Whalen/Hunt v. Early.)

    Rand v. Rowland, 154 F.3d 952, 958 (1998), reciting a whole litany of disadvantages of pro-se prisoners, stated:

    "Pro se prisoners are also limited in their access to legal materials. Jacobsen, 790 F.2d at 1364 n.4 (Citing Moore v. Florida, 703 F.2d 516, 520 (11th Cir. 1983))."   (end quote from Rand v. Rowland.)

EVEN 100,000+ LAWYERS COULDN'T FIND IT

Perhaps Respondent will argue that despite the obstruction by BOP to defendants' and Petitioner/Movant Lopez's discovery of the defect, they should have discovered it if "due diligence" had been employed. That argument is nonsense: Since 1948, it is likely that well over a million prosecutions of violations of law under 18 U.S.C., 21 U.S.C., 8 U.S.C., and 26 U.S.C. have occurred. The vast majority of them have been professionally defended by trained attorneys at the pre-trial, trial, and direct-appeal stages, which probably amounts to over 100,000 different attorneys.

Those attorneys were and are ethically bound to represent their clients zealously, identify any arguable flaws in those charges, and they are ethically bound to engage in "due diligence" of their own. Indeed, the standard of "due diligence" for attorneys must be far higher than that of pro-per unlettered defendants. See Haines v. Kerner, 404 US 519, 30 L.Ed.2d 652 (1972).

Those attorneys could have raised and argued the invalidity of the recodification of 18 U.S.C. at the pre-trial, post-trial, appeal, and collateral attack stages of those cases, if they had known of the problem. They would have had a powerful motivation, and an ethical obligation, to do so: If valid, this would amount to a virtually automatic "win".

If even a tiny fraction of those attorneys had noticed the error and raised an objection to the 18 U.S.C. recodification issue over that time (1948-2007), there would be hundreds and eventually thousands of district-court-level

and appeal-level cases which have considered the issue and argument. Such cases could, if they exist, easily be found with modern computer-based legal research tools: Just do a computer text search for "H.R. 3190", for example, or (public law) "80-772", in the text of the opinions.

Even if Petitioner/Movant Lopez's instant claim (invalidity of 18 U.S.C. recodification) was merely arguable (but ultimately wrong) then the government should easily cite numerous cases in which this same argument was made, considered, and rejected with credible explanations. (Weak, even "frivolous" arguments are usually attempted by many people in many district courts and in all appeal circuits.) Remarkably, a thorough search of published federal appeals and district court cases does not reveal ANY attack on the validity of the Congressional passage of 80-772 until 2006, when a few district court cases appeared.

If the Respondent asserts that Petitioner/Movant Lopez or the defendants should have discovered these facts (concerning H.R. 3190/P.L. 80-772) with the exercise of "due diligence", Respondent is obligated to show legal precedent which, at least, demonstrates that trained attorneys have found this error with their better training, greater experience, and far longer access to (substantially superior) computerized research tools. If the government cannot show that, this court must rule that a pro-se imprisoned non-lawyer (such as Petitioner/Movant Lopez and most defendants) couldn't reasonably be expected to find this error either, and thus 28 U.S.C. 2255(4) applies: For pro-per prisoners, "due diligence" was not enough to find this error. There is no

time bar to a 2255 filing until and including now.

As was held in Locascio v. U.S., 395 F.3d 51, 55 (2nd Cir. 2005);

"28 U.S.C. 2255 subsection (4) 'does not require the maximum feasible diligence, only 'due,' or reasonable diligence' Wims v. U.S., 225 F.3d 190, n.4, (2nd Cir. 2000)."
 (end quote from Locascio.)

Wims, supra, at 190:

"Section 2255(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitation's period's beginning date, moving it from the time when the conviction became final, see 2255(1), to the later date on which the particular claim accrued. See Smith [v. McGinniss], 208 F.3d at 15 (2nd Cir. 2000). (distinguishing tolling provisions from those that restart the limitations period.)" (end quote from Wims v. U.S.)
And from Wims at note 4:

"The statute [2255(4)] does not require the maximum feasible diligence, only "due", or reasonable, diligence. Cf. Armstrong v. McAlpin, 699 F.2d 79, 88-89 (2nd Cir. 1983) (requiring "reasonable" or "ordinary" diligence in the discovery of fraud for statute of limitation purposes."


CONCLUSION

Petitioner/Movant Lopez requests that this court:
1. Appoint an attorney for him, under 18 U.S.C. 3006A.
2. Take judicial notice of the facts alleged herein,

including cited pages from the Congressional Record.

3. Declare that H.R. 3190 was not legally passed in 1948, and P.L. 80-772 was not legally enacted.

4. Declare that purported statutes in 18 U.S.C. including 3231 were not legally enacted, and are null and void.

5. Declare that the trial and appeal courts did not have criminal jurisdiction over any crime in Titles 8, 18, 21, 26, etc, at the time of the alleged crimes, at the times of indictment, or at the times of trial, because of the non-existence of 18 U.S.C. 3231, and thus there was no federal court jurisdiction over these crimes.

6. Vacate Petitioner/Movant's sentence and conviction and order the Bureau of Prisons to free defendant and erase their criminal records.

Signed, _Albert Lopez_  Dated, _11-30-07_

CERTIFICATE OF SERVICE

Under penalty of perjury, Petitioner/Movant certifies that on the date below, he delivered a copy of this filing, addressed to this court and the US Attorney, first class postage affixed, labelled "Legal Mail/Special Mail", to prison authorities. See Houston v. Lack (1988) (mailbox rule).

Signed, _Albert Lopez_  Dated, _11-30-07_